[No. 11895.   Department One.   January 5, 1915.]

BANK OF LIND, *Appellant*, v. A. J. COSS *et al.*, *Respondents.*[1]

SHERIFFS AND CONSTABLES — ATTACHMENT — DISSOLUTION — SUR-RENDER OF PROPERTY—SUBSEQUENT APPEAL—EFFECT.   Upon dissolution of an attachment, the sheriff is bound to return the property to the defendant, upon demand, immediately without waiting for an appeal to be taken and perfected, and is not liable to the plaintiff if, upon appeal subsequently taken, with supersedeas, the order dissolving the attachment is reversed.

SAME.   The fact that the sheriff had been given an indemnity bond by the plaintiff does not put the sheriff under any obligation to hold the attached property after dissolution of the attachment.

Appeal from a judgment of the superior court for Adams county, Holcomb, J., entered November 26, 1913, dismissing an action in tort, upon sustaining a demurrer to the complaint.   Affirmed.

*Wakefield & Witherspoon* and *A. C. Shaw*, for appellant.
*G. E. Lovell*, for respondents.

PARKER, J.—The plaintiff, Bank of Lind, seeks recovery of damages from the defendant A. J. Coss, sheriff of Adams county, and the United States Fidelity & Guaranty Company, the surety upon his official bond, which damages it claims resulted from the unlawful release of personal property which had been seized and was being held by the defendant Coss under a writ of attachment, issued out of the superior court for Adams county at the instance and for the benefit of the plaintiff.   Judgment of dismissal having been rendered in favor of the defendants, upon sustaining their demurrer to the complaint and the plaintiff's election to stand upon its complaint and not plead further, it has appealed to this court.

The controlling facts may be summarized from the complaint as follows:   In October, 1911, appellant commenced

[1]Reported in 145 Pac. 207.

an action in the superior court for Adams county to recover money owing to it by G. H. and L. O. Thomas, and caused a writ of attachment to be issued therein for the seizure and holding of property of the Thomases pending the action. Seizure of property under the writ was accordingly made by respondent Coss as sheriff of Adams county. Thereafter, on November 10, 1911, the Thomases appeared in the action and moved for dissolution of the attachment, which motion came on for hearing on November 22, 1911, when, the matter being submitted to the court for decision, it was by the court taken under advisement, and as alleged in the complaint, "with the understanding that the plaintiff or its counsel, whose office and place of practicing was in Spokane, Washington, a distance of about one hundred miles from the place of the sitting of said court, were to be advised immediately upon the court's decision in the matter, and that a sufficient time was to be given the plaintiff or its counsel, in event the court granted said motion, to take its appeal and file a supersedeas bond therein." Thereafter, on November 27, 1911, the court granted the motion, dissolved the attachment, and entered the order accordingly, and immediately thereafter respondent Coss, who was holding the property as sheriff under the attachment, released and surrendered possession of the property. Appellant had no actual notice of the rendering of the court's decision dissolving the attachment, or of the release of the property by respondent Coss, until about a week later. Whatever the understanding may have been as to appellant being notified upon the rendition of the court's decision on the question of dissolution of the attachment, looking to giving it an opportunity for protecting its interest by appeal and supersedeas, we are unable to gather from the complaint any facts showing that respondent Coss was a party to such understanding, or that there was any duty imposed upon him by virtue of such an understanding, whatever his duty may have been under the law aside from such understanding.

Soon thereafter, appellant gave notice of, and perfected, its appeal to this court from the decision of the superior court dissolving the attachment, and also filed a supersedeas bond such as was sufficient to supersede that decision, in so far as the same could be superseded in view of the prior surrender of the property by respondent Coss. There is no allegation of the complaint pointing to any effort or request on the part of appellant looking to a retaking of the property by respondent Coss after its release by him in pursuance of the dissolution of the attachment by the superior court and the appeal therefrom. Thereafter judgment was rendered in the superior court upon the merits of the action in favor of appellant and against the Thomases for the amount of the debt sued upon. Thereafter, on August 16, 1912, this court reversed the decision of the superior court dissolving the attachment. *Bank of Lind v. Thomas,* 69 Wash. 700, 125 Pac. 776. Thereafter execution was duly issued looking to the collection of the judgment rendered against the Thomases, which execution was returned unsatisfied because no property of the Thomases could be found applicable to the satisfaction of the judgment. This, it is alleged, resulted from the unlawful failure of respondent Coss to hold the attached property after the dissolution of the attachment until appeal and supersedeas was perfected by appellant so as to preserve the attachment.

Was respondent Coss, as sheriff, justified by the order dissolving the attachment in immediately surrendering possession of the attached property? In view of the fact that there was no process or order of the court of any nature then in existence authorizing the holding of the property, we are constrained to hold that he was not only authorized by that order to surrender the property, but that he was bound so to do upon demand from its owner. In *Anderson v. Land,* 5 Wash. 493, 32 Pac. 107, 34 Am. St. 875, Judge Dunbar, speaking for the court touching the termination of the lien of an attachment by its dissolution, a purchaser of the

attached property from its owner pending the attachment claiming his title was perfected upon the dissolution of the attachment, as against a subsequent attachment, though the property remained in the hands of the sheriff during the interim between the dissolution of the first and the levy under the second attachment, said:

"The dissolution of the attachment on the 16th day of December ended the lien, and the owner of the property had a right to make any disposition of it he saw fit, no matter whether the property had actually been turned over to him by the officer or not. He could sell the property during the time the writ was in effect in such case, and the purchaser's title would only be subject to the right of the attaching creditor under the writ, and when the attachment was dissolved there would be an end to any such right, and the purchaser's title would be complete."

It seems to us difficult to escape the controlling force of that decision in respondents' favor here. In *Ryan Drug Co. v. Peacock*, 40 Minn. 470, 42 N. W. 298, dealing with a situation almost exactly like that here involved, Chief Justice Gillfillan, speaking for the court, there said:

"As to what is the duty of the sheriff in respect to the attached property upon the dissolution of the attachment, Drake, Attachm. § 426, states the general rule that 'the special property of the officer in the attached effects is at an end, and he is bound to restore them to the defendant, if he is still the owner of them, or, if not, to the owner.' This is certainly the logical rule, for, the writ being his only authority for keeping the property from the owner, such authority is gone when the writ is dissolved. It is true that under our practice the plaintiff may, by appealing from the order dissolving the writ and giving the bond for a stay, suspend the operation of the order, and that such suspension will relate back to the date of the order, so that, if the officer still has the property, his right to hold it is restored; and it may also be, as between the parties to the writ, that, if between the date of the order and the appeal with a stay the sheriff has returned the property to the defendant, the appeal and stay reinstate the lien so that the plaintiff may require the

sheriff to retake the property. Neither of these, however, is this case. Here the question is, is it the duty of the sheriff to retain the property after the dissolution of the writ, which is his only warrant for holding it, to enable the plaintiff to determine whether he will appeal, and to perfect the appeal and stay, if he decides to take that course? The statute is silent on the point. If it be his duty to still hold the property, for how long must he hold it? Some authorities suggest that he should hold it for a reasonable time. But who is to determine what is a reasonable time? If that be the rule, the officer will be liable to the plaintiff in case he return the property to the defendant before the end of a reasonable time, and to the defendant in case he refuse to return it on demand after such reasonable time. The position of the officer would be a hard one if he must take the risk of the court or jury trying the action against him agreeing with him as to what is a reasonable time. We think it is for the plaintiff, and not the sheriff, to do what may be necessary to preserve the interests of the former in case of a dissolution of the writ. This he may do by procuring and serving on the officer an order directing him, in case the writ shall be dissolved, to retain the property, or staying the operation of order dissolving in case it shall be made."

Counsel for appellant cite and rely principally upon the decision of the Iowa supreme court in *Danforth, Davis & Co. v. Carter*, 4 Iowa 230, which involved the question of the preservation of the lien of an attachment, by appeal from an order of the trial court dissolving the attachment accompanied by a supersedeas, where the controversy was only between the parties to the action in which the attachment was issued; the liability of the sheriff for surrendering the property not being in any way involved. Holding that the lien of the attachment held, as between the parties to the action, the court, on page 237 said:

"It appears that on the decision of the court setting aside the attachment, and before the appeal was taken, the sheriff delivered up the attached property remaining in his hands, and the clerk paid over the money which was in his hands, to the defendant's attorney, 'taking an accountable receipt therefor.' The plaintiffs excepted to the decision of the

court, in refusing to render a judgment against the property, and to order a special execution, and appealed from the same.

"The question now is, whether the attachment still holds the property, the judgment of the court dissolving it, being reversed. We believe that the only consistent decision is, that it still holds. This court has held in this and other cases that an appeal lies from a judgment of the court, dismissing an attachment. The common effect of an appeal is to suspend the effect or operation of the judgment appealed from, if a supersedeas bond is filed, as required by law. What other object can there be in an appeal, in such a case as the present? And what exempts a judgment on an attachment from the ordinary effect of the appeal? It would seem, upon reason, that an appeal should save this, as well as any other part of a cause."

and on page 239 added,

"When the question bears upon the relations of third persons, it is manifest that the attachment may be gone, when it would not be, if viewed with reference to the two parties alone."

In the later case of *Danforth, Davis & Co. v. Rupert,* 11 Iowa 547, the court absolved the clerk of the court from liability upon his paying out money, the proceeds of a sale of perishable attached property, upon dissolution of the attachment, before appeal therefrom; the order of the trial court being thereafter appealed from and reversed. Disposing of the contention that the former decision was decisive against the clerk touching his liability, the court said:

"We do not understand that decision as determining the rights of any others than the parties to that suit. In fact the court says that no question touching the rights of third parties arises in that case, and that the question is decided without reference to such. The court, without doubt, in referring thus to third parties, must have had in view this very cause or the one against the sheriff; because the plaintiffs would, from the nature of the transaction, be compelled to resort to this remedy. We conclude that the defendant is a third party, as thus referred to by the court, and that the

right of plaintiffs to recover, as against defendant, has not been adjudicated. . . . When an attachment is dissolved by the District Court, it is a final adjudication upon all questions involved therein, unless, in the proper time, appealed from. That appeal must be taken forthwith to continue the lien; but as between the parties, four days is a reasonable time within which to perfect such appeal.

"In determining what rule the clerk should be governed by when an attachment has been dissolved, and money deposited with him is demanded, we cannot be guided by precedents, because we are unable to find a case presenting the peculiar condition that this one does. It is true that the safest and most correct course, would be for the clerk to obtain an order of court directing him to pay over the money before so doing. Yet we cannot say that he is liable if he does pay over the money in good faith, after the attachment has been dissolved, the suit ended, and without any notice of an appeal given. Is it not the duty of the plaintiff, whose attachment has been dissolved, to be vigilant, if he desires his cause to stand in *statu quo?* The ruling is against him and he is the only one who can determine whether it is final or not. Had the plaintiffs, who were the only parties interested in having the money remain in the clerk's hands, notified him that they had appealed, and after such notice the defendant had parted with the money, he would have been liable."

Some contention is made rested upon the fact that appellant furnished respondent Coss an indemnity bond securing him, "against any damages that he might sustain by reason of the execution of said writ of attachment." We are quite unable to see that this put upon respondent Coss any obligation to hold the property after the dissolution of the attachment. There was then no longer any attachment to execute, so far as the duty of respondent Coss as sheriff was concerned. We have already noticed that there was no move made by appellant to have the attachment revived and respondent Coss retake the property.

Counsel for appellant dwell somewhat upon wrongs which they conceive as possible to flow from the conclusion we here reach. It must be remembered that the right of seizure of

property by writ of attachment under modern systems of procedure is purely statutory. 4 Cyc. 396. The doctrine which calls for our present conclusion works no greater hardship to a creditor than as if there were no attachment statutes, in which event no seizure of a defendant's property could be made until after judgment against him.

The judgment is affirmed.

CROW, C. J., CHADWICK, GOSE, and MORRIS, JJ., concur.